# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### JAMES R. LARSEN, District Court Executive
### P.O. Box 1493; Spokane, WA 99210
### (509) 458-3400

September 25, 2009

U.S. District Court Clerk
Central District of California
411 West Fourth Street, Room 1053
Santa Ana, CA 92701-4516

RE:   **USA v BRIAN LEIGH MOORE**
        EDWA No.  MJ-09-272
        CDCA No.  SACRO9-184

Enclosed is a certified copy of the docket sheet and copies of documents contained in
the Eastern District of Washington Court file.   Please acknowledge receipt on the
duplicate letter enclosed.

Thank you,

s/ L. Stejskal, Deputy Clerk

LOCATION-CUSTODY

**Eastern District of Washington**
**U.S. District Court (Spokane)**
**CRIMINAL DOCKET FOR CASE #: 2:09-mj-00272-CI-1**
**\*\*\* Internal Use Only \*\*\* Internal Use Only \*\*\* Internal Use Only**
**\*\*\***

Case title: USA v. Moore          Date Filed: 09/11/2009
Other court case number: SAC09-184 Central District of
                           California - Southern Division

Assigned to: Magistrate Judge Cynthia
Imbrogno

**Defendant (1)**

**Brian Leigh Moore**       represented by   **Christina L Hunt**
                                      Federal Defenders - SPO
                                      10 North Post
                                      Suite 700
                                      Spokane , WA 99201
                                      509-624-7606
                                      Fax: 15097473539
                                      Email: tina_hunt@fd.org
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*
                                      *Designation: Public Defender or*
                                      *Community Defender Appointment*

                                      **Federal Public Defender - SPO**
                                      Spokane Office
                                      North 10 Post
                                      Suite 700
                                      Spokane , WA 99201
                                      509-624-7606
                                      Fax: 15097473539
                                      Email: roger_peven@fd.org
                                      *TERMINATED: 09/16/2009*
                                      *ATTORNEY TO BE NOTICED*
                                      *Designation: Public Defender or*
                                      *Community Defender Appointment*

ATTEST A True Copy
JAMES R LARSEN, Clerk
United States District Court
Eastern District of Washington
By _____
Deputy Clerk

| **Pending Counts** | **Disposition** |
|---|---|

None

| **Highest Offense Level (Opening)** | |
|---|---|

None

| **Terminated Counts** | **Disposition** |
|---|---|

None

| **Highest Offense Level (Terminated)** | |
|---|---|

None

| **Complaints** | **Disposition** |
|---|---|

26 USC 5861(d): KNOWING
POSSESSION OF AN UNREGISTERED
FIREARM

---

**Plaintiff**

**USA**     represented by   **Katherine Jill Bolton**
U S Attorney's Office - SPO
920 W Riverside Suite 300
P O Box 1494
Spokane , WA 99210-1494
509-353-2767
Email:
USAWAE.JBoltonECF@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/11/2009 | 1 | RULE 5 DOCUMENTS RECEIVED from Central District of California as to Brian Leigh Moore (LS, Courtroom Deputy) (Entered: 09/11/2009) |
| 09/11/2009 | 2 | NOTICE OF HEARING - By Court as to Brian Leigh Moore. Text entry; no PDF attached. Initial Appearance - Rule 5 set for 9/11/2009 at 1:30 PM in Spokane by Video Conference before Magistrate Judge Hutton. (LS, Courtroom Deputy) (Entered: 09/11/2009) |
| 09/11/2009 | 3 | MOTION for Detention *Hearing* by USA as to Brian Leigh Moore. (Bolton, Katherine) (Entered: 09/11/2009) |
| 09/11/2009 | 4 | ACKNOWLEDGMENT OF NOTICE OF RIGHTS by Brian Leigh Moore (LS, Courtroom Deputy) (Entered: 09/11/2009) |

| 09/11/2009 | 5 | WAIVER of Rule 5 Hearings by Brian Leigh Moore (LS, Courtroom Deputy) (Entered: 09/11/2009) |
|---|---|---|
| 09/11/2009 | 6 | Minute Entry for VIDEO CONFERENCE proceedings held before Magistrate Judge James P. Hutton:Initial Appearance in Rule 5 Proceedings as to Brian Leigh Moore held on 9/11/2009 (Reported/Recorded by: FTR/S-740) (LS, Courtroom Deputy) (Entered: 09/11/2009) |
| 09/11/2009 | 7 | ***CJA 23 Financial Affidavit by Brian Leigh Moore (LS, Courtroom Deputy) (Entered: 09/11/2009) |
| 09/11/2009 | 8 | ORDER APPOINTING FEDERAL DEFENDER as to Brian Leigh Moore. On the basis of the sworn financial statement, the court finds Defendant is financially unable to retain counsel. IT IS ORDERED the Federal Defenders of Eastern Washington are appointed to represent Defendant pursuant to Title 18 United States Code Sec. 3006A Appointed Federal Public Defender - SPO for Brian Leigh Moore - Text entry;no PDF document will issue. This text-only entry constitutes the court order on the matter. Signed by Magistrate Judge James P. Hutton. (KRR, Judicial Assistant) (Entered: 09/11/2009) |
| 09/11/2009 | 9 | ORDER Setting Bail Hearing as to Brian Leigh Moore: Bail Hearing set for 9/15/2009 at 1:30 PM in Spokane by Video Conference before Magistrate Judge Hutton. Signed by Magistrate Judge James P. Hutton. (LS, Courtroom Deputy) (Entered: 09/11/2009) |
| 09/15/2009 | 10 | ***Pretrial Services Report as to Brian Leigh Moore (Hall, Wendy) (Entered: 09/15/2009) |
| 09/15/2009 | 11 | Minute Entry for VIDEO CONFERENCE proceedings held before Magistrate Judge James P. Hutton:Bail Hearing as to Brian Leigh Moore held on 9/15/2009 (Reported/Recorded by: FTR/S-740) (LS, Courtroom Deputy) (Entered: 09/15/2009) |
| 09/15/2009 | 12 | ORAL MOTION to Continue by USA as to Brian Leigh Moore. (LS, Courtroom Deputy) (Entered: 09/15/2009) |
| 09/15/2009 | 13 | ORDER Continuing Bail Hearing: Bail Hearing continued to 9/17/2009 at 1:30 PM before Magistrate Judge Cynthia Imbrogno. Signed by Magistrate Judge James P. Hutton. (LS, Courtroom Deputy) (Entered: 09/15/2009) |
| 09/16/2009 | 14 | ***Supplemental Pretrial Services Report as to Brian Leigh Moore (Hall, Wendy) (Entered: 09/16/2009) |
| 09/16/2009 | 15 | SUPPLEMENT re 3 MOTION for Detention *Hearing* by USA as to Brian Leigh Moore (Attachments: # 1 Exhibit Attachment A)(Bolton, Katherine) (Entered: 09/16/2009) |
| 09/16/2009 | 16 | NOTICE OF ATTORNEY APPEARANCE: Christina L Hunt appearing for Brian Leigh Moore (Hunt, Christina) (Entered: 09/16/2009) |
| 09/17/2009 | 17 | ORAL MOTION to Continue by Brian Leigh Moore. (LS, Courtroom Deputy) (Entered: 09/17/2009) |

| 09/17/2009 | 18 | Minute Entry for proceedings held before Magistrate Judge Cynthia Imbrogno:Bail Hearing as to Brian Leigh Moore held on 9/17/2009 (Reported/Recorded by: FTR/S-740) (LS, Courtroom Deputy) (Entered: 09/17/2009) |
| 09/17/2009 | 19 | **ORDER GRANTING 17 Motion to Continue as to Brian Leigh Moore (1) Bail Hearing set for 9/18/2009, at 1:30 PM, in Spokane, before Magistrate Judge Cynthia Imbrogno. Text-only entry; no PDF document will issue. This text-only entry constitutes the court order or notice on the matter. Signed by Magistrate Judge Cynthia Imbrogno. (KR, Judicial Assistant) (Entered: 09/17/2009)** |
| 09/18/2009 | 20 | Minute Entry for proceedings held before Magistrate Judge Cynthia Imbrogno:Bail Hearing as to Brian Leigh Moore held on 9/18/2009 (Reported/Recorded by: FTR/S-740) (LS, Courtroom Deputy) (Entered: 09/18/2009) |
| 09/18/2009 | 21 | ORAL MOTION for Production of Documents by Brian Leigh Moore. (LS, Courtroom Deputy) (Entered: 09/18/2009) |
| 09/18/2009 | 22 | ORAL MOTION to Continue Bail Hearing by Brian Leigh Moore. (LS, Courtroom Deputy) (Entered: 09/18/2009) |
| 09/18/2009 | 23 | ORDER GRANTING 21 Motion to Produce as to Brian Leigh Moore (1). Text-only entry; no PDF document will issue. This text-only entry constitutes the court order or notice on the matter. Signed by Magistrate Judge Cynthia Imbrogno. (KR, Judicial Assistant) (Entered: 09/18/2009) |
| 09/18/2009 | 24 | ORDER GRANTING 22 Motion to Continue as to Brian Leigh Moore (1). Bail Hearing continued to 9/22/2009, at 1:30 PM in Spokane, before Magistrate Judge Cynthia Imbrogno. Text-only entry; no PDF document will issue. This text-only entry constitutes the court order or notice on the matter. Signed by Magistrate Judge Cynthia Imbrogno. (KR, Judicial Assistant) (Entered: 09/18/2009) |
| 09/22/2009 | 25 | Minute Entry for proceedings held before Magistrate Judge Cynthia Imbrogno:Bail Hearing as to Brian Leigh Moore held on 9/22/2009 (Reported/Recorded by: FTR/S-740) (LS, Courtroom Deputy) (Entered: 09/22/2009) |
| 09/22/2009 | 26 | ORDER of REMOVAL: Granting (Ct Rec 3 ) Motion for Detention as to Brian Leigh Moore. Signed by Magistrate Judge Cynthia Imbrogno. (LS, Courtroom Deputy) (Entered: 09/22/2009) |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MJ-09-272 |
| | ) | |
| BRIAN LEIGH MOORE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# RULE 5 PAPERS

FILED

2009 AUG 26 PM 3: 09

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY: ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

October 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **SACR09-184** |
| Plaintiff, | I N D I C T M E N T |
| v. | [26 U.S.C. § 5861(d): Knowing Possession Of An Unregistered Firearm] |
| BRIAN LEIGH MOORE, | |
| Defendant. | |

The Grand Jury charges:

<u>COUNT ONE</u>

[26 U.S.C. § 5861(d)]

On or about April 27, 2009, in Orange County, within the Central District of California, defendant BRIAN LEIGH MOORE, knowingly possessed a firearm, namely, a firearm silencer, wrapped in black tape, bearing no serial number, and affixed to a Jennings model J-22 pistol, .22 caliber, serial number #260655,

1  which silencer was not registered to defendant MOORE in the

2  National Firearms Registration and Transfer Record as required by

3  Chapter 53, Title 26, United States Code.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[26 U.S.C. § 5861(d)]

On or about April 27, 2009, in Orange County, within the Central District of California, defendant BRIAN LEIGH MOORE knowingly possessed a firearm, namely, a Norinco Model 320 rifle, bearing serial number MSA07108, with a barrel of less than 16 inches in length, which was not registered to defendant MOORE in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

A TRUE BILL

/S/
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

JEANNIE M. JOSEPH
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

ROBERT J. KEENAN
Assistant United States Attorney

3

AUG-27-2009  12:39    U S ATTORNEYS    714 338 3561    P.02/03

COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | | CASE NUMBER |
|---|---|---|
| | Plaintiff(s) | SA 09-<br>**SACR09-184** |
| v. | | |
| BRIAN LEIGH MOORE, | | **WARRANT FOR ARREST** |
| | Defendant(s) | |

TO:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest _____ BRIAN LEIGH MOORE _____

and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐ Complaint ☒ Indictment

☐ Information   ☐ Order of Court   ☐ Violation Petition   ☐ Violation Notice

charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

   KNOWING POSSESSION OF AN UNREGISTERED FIREARM

in violation of Title ____26____ United States Code, Section(s) __5861(d)__

| Terry Nafisi | | |
|---|---|---|
| NAME OF ISSUING OFFICER | | AUG 2 6 2009   Santa Ana, CA |
| Clerk of Court | | |
| TITLE OF ISSUING OFFICER | | DATE AND LOCATION OF ISSUANCE |
| | | **ARTHUR NAKAZATO** |
| *Nancy Castro* SEAL | BY: | |
| SIGNATURE OF DEPUTY CLERK | | NAME OF JUDICIAL OFFICER |

### RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

| DATE RECEIVED | NAME OF ARRESTING OFFICER |
|---|---|
| DATE OF ARREST | TITLE |

| DESCRIPTIVE INFORMATION FOR DEFENDANT<br>CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |
|---|---|

**WARRANT FOR ARREST**

CR-12 (07/04)    PAGE 1 of 2

James A. McDevitt
United States Attorney
Eastern District of Washington
K. Jill Bolton
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )        MJ-09-272
       vs.                   )
                             )        Motion for Detention Hearing
BRIAN LEIGH MOORE,           )
                             )
            Defendant.       )
                             )

The United States moves for pretrial detention of Defendant, pursuant to 18 U.S.C. § 3142(e) and (f).

1.    Eligibility of Case.  This case is eligible for a detention order because the case involves:

☐    Crime of violence (as defined in 18 U.S.C. § 3156(a)(4) which includes any felony under Chapter 109A, 110 and 117),

☐    Maximum penalty of life imprisonment or death,

☐    Drug offense with maximum penalty of 10 years or more,

☐    Felony, with two prior convictions in above categories,

☐    Felony that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under 18 U.S.C. section 2250,

☒    Serious risk Defendant will flee, or

☐    Serious risk obstruction of justice.

Motion for Detention Hearing - 1
P90911LC.JBD.wpd

2.  <u>Reason For Detention</u>.  The Court should detain Defendant because there is no condition or combination of conditions which will reasonably assure:

     ☒   Defendant's appearance as required, or

     ☒   Safety of any other person and the community.

3.  <u>Rebuttable Presumption</u>.  The United States will not invoke the rebuttable presumption against Defendant under Section 3142(e). The presumption applies because there is probable cause to believe Defendant committed:

     ☐   Drug offense with maximum penalty of 10 years or more,

     ☐   18 U.S.C. § 924(c) firearms offense, or

     ☐   Kidnaping, sexual crimes, or child pornography offenses.

4.  <u>Time For Detention Hearing</u>.  The United States requests the Court conduct the detention hearing:

     ☐   At the first appearance, or

     ☒   After a continuance of three days.

5.  <u>Other Matters</u>.

     ☐

DATED September 11, 2009.

James A. McDevitt
United States Attorney

s/K. Jill Bolton

K. Jill Bolton
Assistant United States Attorney

Motion for Detention Hearing - 2
P90911LC.JBD.wpd

1      I hereby certify that on September 11, 2009, I electronically filed the

2 foregoing with the Clerk of the Court using the CM/ECF System.

3

4

5                                  s/K. Jill Bolton

6

7                                  K. Jill Bolton
Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Detention Hearing - 3
P90911LC.JBD.wpd

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,            )    NO. MJ·09-272
                                     )
                Plaintiff,           )
                                     )    ACKNOWLEDGMENT OF NOTICE OF
        v.                           )    RIGHTS
                                     )
Brian Leigh Moore,                   )    (FED. R. CRIM. P. 5)
                                     )
                Defendant.           )    (Complaint or Indictment)
                                     )

_____

        The undersigned defendant does hereby acknowledge:  I appeared
on this date and was advised as follows:

        1)    Of the charge or charges placed against me,  and  I
acknowledge receipt of a copy of the:

            ☐ Complaint
            ☒ Indictment

which specifically sets forth the allegations;

        2)    That I have been advised of the maximum penalty provided
by law;

        3)    My right to remain silent at all times and if I make a
statement it can be used against me;

        4)    My right to retain my own counsel, and if I am without
funds, to have counsel appointed to represent me in this district
and the requesting district;

        5)    My right to have a preliminary examination hearing, if
charged by Complaint, before a United States Magistrate Judge and to
have counsel present at that hearing, or waive this hearing in
writing;

        6)    My right to a jury trial before a United States District
Judge, to be confronted by the United States' witnesses, and have
witnesses attend on my behalf;

        7)    My right to state in writing a wish to plead guilty or
nolo contendre, to waive trial in the district in which the
Indictment is pending, and to consent to disposition of this case in

ACKNOWLEDGMENT OF NOTICE OF RIGHTS - 1

this district, *subject to* the approval of the United States Attorney for the charging district and this district;

8)    My right to an identity hearing to ascertain if I am the person named in the charging document or to waive this hearing in writing;

9)    My right to a detention hearing within three business days, if the United States moves for detention, and to be represented by counsel at that hearing;

10)   My right, if I am not a United States citizen, to have my country's consulate informed of my arrest and detention.

_____9/11/09_____          _____
           Date                        Defendant

Interpreted by (if applicable):


_____
(Sign and Print Name)

ACKNOWLEDGMENT OF NOTICE OF RIGHTS - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,           )
                                    )      MJ- 09 - 272
              Plaintiff,            )
                                    )      WAIVER OF RULE 5 HEARINGS
                                    )
_Brian Leigh Moore_ ,               )
                                    )
                                    )
              Defendant.            )
_____     )

     The undersigned defendant does hereby acknowledge:  I appeared
on this date in the Eastern District of Washington, was advised of
the charge(s) pending against me in the prosecuting district, and
was informed of my rights to:

     (1)remain silent, knowing that if I make a statement, it can be
used against me; (2) retain counsel or have counsel appointed for
me; (3) an identity hearing to determine if I am the person sought
by the prosecuting district; and (4) plead guilty to the charge in
this district, if I and the United States Attorneys in this district
and in the requesting district agree.

     If this matter is proceeding by **COMPLAINT**:

     **I WAIVE (GIVE UP) MY RIGHT TO A(N)**

     (✗) identity hearing in this district
     (  ) preliminary examination in this district
     (  ) bail hearing in this district


     If this matter is proceeding by **INDICTMENT**:

     **I WAIVE (GIVE UP) MY RIGHT TO A(N)**

     (✗) identity hearing in this district
     (  ) bail hearing in this district

WAIVER OF RULE 5 HEARINGS - 1

If this matter is proceeding by **PETITION**:

**I WAIVE (GIVE UP) MY RIGHT TO A(N)**

( ) identity hearing in this district
( ) probable cause hearing in this district
( ) bail hearing in this district

If this matter is proceeding by **WARRANT**:

**I WAIVE (GIVE UP) MY RIGHT TO A(N)**

( ) identity hearing in this district
( ) bail hearing in this district

and, therefore, consent to the issuance of an order requiring my appearance in the prosecuting district where the charge is pending against me.

As to those hearings which are waived in this district, other than the identity hearing, I **RESERVE** the right to have those hearings in the prosecuting district.

_____
Defendant

9/11/09
_____
Date

_____
Defense Counsel

Interpreted by (if applicable):

_____
(Sign and Print Name)

WAIVER OF RULE 5 HEARINGS - 2

**UNITED STATES DISTRICT COURT - EASTERN DISTRICT OF WASHINGTON**

## MAGISTRATE JUDGE HUTTON

### MJ-09-272
### USA  v. BRIAN LEIGH MOORE

## [VIDEO CONFERENCE] RULE 5 INITIAL APPEARANCE:

| | | | |
|---|---|---|---|
| [ X ] | Honorable James P. Hutton | [ X ] | Tim Ohms,  USAtty |
| [ X ] | L. Stejskal, Courtroom Deputy [S] | [ X ] | Christina Hunt, Defense Counsel |
| [ X ] | Karen White, Courtroom Deputy [Y] | [ X ] | Gloria Petretee, Pretrial / Probation |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# Remarks

Defendant appeared with counsel and consented to appearance by video conference. He was advised of his rights and the allegations contained in the Indictment  from the Central District of California - Southern Division.    Based upon the representations contained in the Financial Affidavit, the Court appointed the Federal Defender to represent defendant in this district.

The Government has filed a Motion for Detention (Ct. Rec. 3); defendant waived Identity hearing but requested that a bail hearing be scheduled in this district.

BAIL HEARING [Video / JPH]: 9/15/09 @ 1:30 pm

FTR-S * 2:35 - 2:45 pm

[VIDEO CONFERENCE] RULE 5 INITIAL APPEARANCE:   9/11/09

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,            )    No. MJ-09-272-1
                                     )
                 Plaintiff,          )    FED. R. CRIM. P. 5
                                     )
v.                                   )    ORDER SETTING HEARING
                                     )
                                     )    ☐    Identity
BRIAN LEIGH MOORE,                   )
                                     )    ☐   ⟋ Probable Cause
                 Defendant.          )
                                     )    ☑ ⟋  Bail

_____

Date of hearing:    September 11, 2009

Defendant agreed to this hearing proceeding via video conference.

☐ Complaint    ☑ Indictment    ☐ Superseding Indictment

☐ Information

☐ Petition for action: Pretrial

☐ Petition for action: Post-trial, post-guilty plea, pre-sentencing

☐ Petition for action: Post-conviction

Defendant was advised of, and acknowledged, Defendant's rights.

☑ Defendant, individually and through counsel, waived the right to
an identity hearing, pursuant to Rule 5.  Defendant's waiver is
accepted as knowing and voluntary.

☑ Bail hearing set:

        __Tuesday, September 15, 2009__        __1:30 p.m.__
               (Date)                             (Time)

        ☐    Judge Imbrogno/Spokane    ☑ Judge Hutton/Yakima

        ☑ ⟋ Video Conference

        ☑ ⟋  Pending the hearing, Defendant shall be detained in the
             custody of the United States Marshal and produced for the
             hearing or until further order of the court.

ORDER SETTING HEARING - 1

1  ☑ The U.S. Probation Office personnel shall prepare a Pretrial
   Services Report prior to the bail hearing, and shall notify defense
2  counsel prior to interviewing Defendant.

3  ☐  Other: _____

4         _____

5         _____

6         _____

7

8  **IT IS SO ORDERED.**

9         DATED September 11, 2009.

10
                      James P. Hutton
11                    JAMES P. HUTTON
               UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER SETTING HEARING - 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## MAGISTRATE JUDGE HUTTON

### MJ-09-272
### USA  v  BRIAN LEIGTH MOORE

### [VIDEO CONFERENCE] BAIL HEARING:   9/15/09

| | | | |
|---|---|---|---|
| [ X ] | Honorable James P. Hutton | [ X ] | Jill Bolton, USAtty |
| [ X ] | L. Stejskal, Courtroom Deputy [S] | [ X ] | Christina Hunt, Defense Counsel |
| [ X ] | Alma Gonzalez, Courtroom Deputy [Y] | [ X ] | Tommy Rosser, Pretrial / Probation |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# Remarks

The Government proffered the Pretrial Services report and moved for the continued detention of defendant.  Defense counsel argued for defendant's release. Comments from Officer Rosser.

Ms. Bolton moved for a continuance to allow Pretrial Services to confirm information about family; Ms. Hunt agreed to a continuance and the Court granted the continuance.

*BAIL HEARING [S/CI]: 9/17/09 @ 1:30 pm*

FTR-S * 2:00 pm - 2:13 pm
[VIDEO CONFERENCE]  BAIL HEARING:  9/15/09

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF WASHINGTON

3
UNITED STATES OF AMERICA,              )
4                                      )
                        Plaintiff,     )      NO. MJ-09-272-1
5                                      )
    v.                                 )      ORDER CONTINUING BAIL
6                                      )      HEARING
BRIAN LEIGH MOORE,                     )      **(Ct. Rec. 12)**
7                                      )
                        Defendant.     )
8   _____)

9        On September 15, 2009, a bail hearing was held.  K. Jill

10  Bolton appeared for the government and defendant was present and

11  represented by counsel Christina Hunt.  Today's proceedings were

12  held via video conference with defendant's permission.

13       The government proffered the pretrial services report and

14  moved for the continued detention of the defendant.

15       The Court heard argument from counsel

16       The government **orally** moved for a continuance to allow time

17  for U.S. Probation to verify the family members ability to have

18  defendant transported to California.

19       The Court, finding good cause for the same, **granted** the oral

20  motion to continue **(Ct. Rec. 12)**.  U.S. Probation is directed to

21  prepare a supplemental pretrial services report.

22       The defendant shall continue to be held in detention.

23       **IT IS SO ORDERED.**

24     DATED this 15th day of September, 2009.

25
                                  s/ James P. Hutton
26                                JAMES P. HUTTON
                          United States Magistrate Judge
27

28

ORDER GRANTING MOTION TO
CONTINUE BAIL HEARING- 1

1  James A. McDevitt\
   United States Attorney
2  Eastern District of Washington
   K. Jill Bolton
3  Assistant United States Attorney
   Post Office Box 1494
4  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
5

6              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
7

8  UNITED STATES OF AMERICA,          )
                                       )
9          Plaintiff,                  )
                                       )   MJ-09-272
10     vs.                             )
                                       )   Supplement To United States'
11 BRIAN LEIGH MOORE,                  )   Motion For Detention
                                       )
12         Defendant.                  )
                                       )
13

14         Plaintiff, United States of America, by and through James A. McDevitt,

15 United States Attorney for the Eastern District of Washington, and K. Jill Bolton,

16 Assistant United States Attorney for the Eastern District of Washington, submits

17 the following Supplement To United States' Motion For Detention.

18         The United States supplements it's Motion For Detention with Attachment

19 A, which is Statement Of Investigating Officer, Affidavit Of Facts, Report

20 Number 07-356136. The Court is advised that Spokane Police Detective Kip

21 Hollenbeck will be available to answer questions at the Detention Hearing and to

22 supply additional information to the Court about the nature of the pending offense

23 against the Defendant in the Central District of California, as well as the risk to the

24 Community posed by the Defendant's release  at the hearing before this Court

25

26

27

28

Supplement To United States' Motion For Detention - 1
P90916LC.JBD.wpd

1  scheduled for September 17, 2009, at 1:30 p.m.

2

3  DATED September 16, 2009.

4
                              James A. McDevitt
5                              United States Attorney

6                              s/K. Jill Bolton

7
                              K. Jill Bolton
8                              Assistant United States Attorney

9
       I hereby certify that on September 16, 2009, I electronically filed the
10
    foregoing with the Clerk of the Court using the CM/ECF System which will send
11
    notification of such filing to the following, and/or I hereby certify that I have
12
    mailed by United States Postal Service the document to the following non-
13
    CM/ECF participant(s):
14

15  Roger J. Peven
    Federal Defenders of Eastern Washington
16  10 North Post, Suite 700
    Spokane, WA 99201
17

18

19
                              s/K. Jill Bolton
20
                              K. Jill Bolton
21                              Assistant United States Attorney

22

23

24

25

26

27

28

Supplement To United States' Motion For Detention - 2
P90916LC.JBD.wpd

# ATTACHMENT A

Clerk Copy

3

**FILED**

**APR 27 2009**

THOMAS R. FALLQUIST
SPOKANE COUNTY CLERK

STATEMENT OF INVESTIGATING OFFICER
AFFIDAVIT OF FACTS

**09101570-9**

STATE OF WASHINGTON)
COUNTY OF SPOKANE)                    REPORT NUMBER: 07-356136

DEFENDANT:  Brian L. Moore, WM, 5/8/66

---

The undersigned, a law enforcement officer, competent to testify, states as follows:
That he/she believes a crime was committed by the above named
defendant/defendants in the City and County of Spokane, State of Washington,
because:

On 12/9/07 at approximately 0142 Spokane Police Department officers responded to
1620 S. Maple, located in the City and County of Spokane, State of Washington, on the
report of a shooting. Shellye Stark called 9-1-1 to report that she shot her estranged
husband, Dale Stark. Once there, officers determined the victim suffered multiple
gunshot wounds. He was transported to Deaconess Medical Center where he was
pronounced dead.

Shellye Stark told officers she was estranged form her husband, Dale Stark. She left
him for another man and moved to California in August or September of this year.
Shellye Stark said her husband had recently been threatening to kill her and her family
because she wouldn't pay him money. Shellye Stark traveled to Spokane on or about
12/6/07 in order to obtain a restraining order to gain custody of their 17 year old son
Christopher Stark and remove Dale Stark from their residence at ███████████

Shellye Stark said she acquired a handgun for "protection" and was armed with that
handgun on 12/8/07.

On 12/9/07 Shellye Stark was at 1620 S. Maple with Christopher Stark and her nephew,
22 year old Dale Johnson, waiting for Dale Stark to return from a two week business
trip.  He was to have arrived home at approximately 0300 hours but arrived early,
shortly after 0100 hours. When he walked into the front door Dale Johnson handed him
the restraining order and told Dale Stark he had to leave the house.  Dale Stark asked
Shellye Stark why she had not told him about her intentions. Dale Stark said he would
not leave his own house.  Shellye Stark told Christopher Stark and Dale Johnson to
leave the residence because she didn't want them to get hurt.  She said that Dale Stark

4

BOB PROSECUTORS

4

tried to block the door, preventing Christopher Stark and Dale Johnson from leaving. Christopher Stark and Dale Johnson managed to get around him and exited through the front door. Shellye Stark also wanted to leave but he blocked the door and prevented her escape. Shellye Stark said Dale Stark refused to move out of the way. Shellye Stark told him she wanted to leave. He began looking at a knife laying on the kitchen counter near her. At the time she was standing near her purse which contained the handgun. He called her a bitch. She thought he was going to grab the knife so she removed the handgun from her purse and "shot him."

Shellye Stark said she called 9-1-1 to report the shooting. She was told to put the gun down and go outside to wait for officers.

Shellye Stark would not elaborate further and requested counsel.

At the scene investigators discovered a .357 revolver. The cylinder contained six .357 casings. One bullet was recovered from the south wall of the living room. Trajectory would have placed the shooter in the kitchen, firing the weapon directly to the south.

**Christopher Stark** told investigators he lived with his father Dale Stark at ███████ ███████ Dale Stark was frequently out of town on business. His mother, Shellye Stark filed for divorce in September and moved to California with another man. Since his mother left town, Christopher Stark was frequently left home alone. According to his mother, Dale Stark recently sent her a threatening email indicating "he would hurt her, maybe even kill her."

Dale Stark had been gone for about two weeks on a business trip. Shellye Stark arrived in town on or about 12/6/07 and had been staying at the Stark residence, unknown to Dale Stark. Shellye Stark told Christopher that she had filed for "new paperwork" and he "wouldn't have to worry about Dad anymore." Apparently she had obtained a restraining order and wanted her nephew Dale Johnson to serve the order on Dale Stark when he returned home. Christopher Stark, Shellye Stark and Dale Johnson were waiting for Dale Stark to return in the early morning hours of 12/9/07 at approximately 0300 hours. Shellye Stark didn't want Dale Stark to know she was there.

Christopher Stark said Dale Stark arrived unexpectedly at about 0200 hours and walked through the door. The original plan was for Dale Johnson to serve the order before Dale Stark entered the residence. When Dale Stark walked into the living room, he seemed confused by Shellye Stark's presence. He walked into the kitchen and asked what was going on. Dale Johnson tried to get Dale Stark to step outside with him. Dale Stark refused and at this time Shellye Stark told Christopher Stark and Dale Johnson to leave the house. Christopher Stark said he "ran" out the front door and within two to five seconds, heard between three and six gunshots as he descended the concrete steps in front of the residence. Frightened, both he and Dale Johnson fled in Christopher Stark's vehicle from the scene.

Case 8:09-cr-00184-AG   Document 5   Filed 09/30/2009   Page 28 of 47
Clark Copy

5

Christopher Stark knew his mother had a gun. She had approached him a few days before and told Christopher Stark that Dale Stark "might get violent." Shellye Stark said there was a possibility that she would have to use the gun to "protect" herself. Shellye Stark said she may have to "defend" herself and asked Christopher Stark if he "had a problem with that." On 12/7/07 Shellye Stark said she was not sure how Dale Stark would react when she served the restraining order. Shellye Stark wanted to know how Christopher Stark felt about that. He told investigators, "I knew there was a possibility that she would have a gun. She said she may have to defend herself. I asked how. She said she had a gun."

**Dale Johnson** told investigators that he was approached by his aunt Shellye Stark on 12/8/07 and asked to serve a restraining order on her estranged husband. Shellye Stark told Dale Johnson that Dale Stark had been threatening the entire family. Dale Johnson said originally his mother (Shellye Stark's sister Karen Jacquetta) was supposed to have served the restraining order, however Karen Jacquetta was involved in a vehicular collision on 12/7/07 and was in Deaconess Medical Center ICU in serious condition. It had previously been arranged that Karen Jacquetta would supply a gun to Shellye Stark so she could use it for "protection." Karen Jacquetta had been transporting a .357 revolver and a shotgun from Priest River, ID when she struck a moose. Dale Johnson obtained the guns from Jacquetta's wrecked vehicle and completed the transaction to Shellye Stark in the parking lot at Deaconess Medical Center on 12/8/07 at about 1200 hours. (Dale Johnson only delivered the .357 revolver as the shotgun belonged to him. He claimed to have taken the shotgun home.)

Dale Johnson left the hospital on 12/8/07 at approximately 1900 hours with Shellye Stark and Christopher Stark. They were anticipating Dale Stark to return home at approximately 0300 hours. Dale Stark arrived early, shortly after 0100 hours, catching them by surprise. Shellye Stark did not want Dale Stark to know she was there and ran back toward the kitchen. Dale Stark saw Shellye Stark and Dale Johnson and asked why they were there. From the back of the kitchen Dale Johnson heard Shellye Stark tell him to serve the order on Dale Stark. Dale Johnson asked Dale Stark to step outside, but Dale Stark refused. Dale Stark wanted to know what was going on. Dale Johnson said that Dale Stark did not appear to be angry, but rather surprised and confused. Shellye Stark instructed Chris Stark and Dale Johnson to "get out of the house." Both Christopher Stark and Dale Johnson immediately proceeded to the front door. Dale Stark made no attempt to stop them. At the time Shellye Stark was standing in the threshold between the living room and kitchen. Dale Johnson said as they "ran" down the front steps he heard three or four gunshots. He estimated that only two to three seconds elapsed between last observing Dale Stark to when he heard the first shot.

Dale Johnson admitted he knew what had just taken place however he was frightened and fled the scene. They went toward Deaconess Medical Center where it had previously been arranged for them to meet after serving the restraining order.

6

Dale Johnson said Dale Stark had nothing in his hands. Dale Stark was holding his hands up in an inquisitive non threatening manner. Dale Johnson said Dale Stark did not appear to be angry but seemed confused about what had taken place.

Dale Johnson said he was instructed by Shellye Stark call Brian Moore as soon as the temporary restraining order was served. Brian Moore wanted to know if Christopher Stark was all right. Brian Moore then instructed Dale Johnson to call 9-1-1. Christopher Stark then called 9-1-1. A review of the calls received by 9-1-1 revealed Shellye Stark calling at 0141 hours and Christopher Stark calling approximately nine minutes later at 0150 hours.

Dale Johnson observed Shellye Stark with the same revolver he delivered to her earlier that day. He watched her pull the gun from the waistband area behind her back shortly before Dale Stark arrived at the house.

**Karen Jachetta will testify** that on or about 12/7/07 she was contacted by her sister Shellye Stark and advised of alleged death threats by Dale Stark directed at Shellye Stark and her family. At Shellye Stark's request, Jachetta acquired the .357 caliber revolver from their mother, Dennise Johnson. Shellye Stark asked Karen Jachetta to assist in serving a TRO. She was transporting the revolver and a shotgun to Shellye Stark in Spokane when her car collided with a moose. Jachetta was critically injured and subsequently transported to Deaconess Medical Center. Shellye Stark and Jachetta's son Dale Johnson responded to the accident scene and recovered the guns.

**Det. Hollenbeck will testify:**

Based on the above information Shellye Stark was arrested on one count of First Degree Murder and booked into SCSO Jail.

At autopsy it was determined that Dale Stark suffered five gunshot wounds. One to the left side of the left thigh; one to the left arm just above the elbow (which traveled through the arm and entered the left side of his chest), three additional bullets entered the left side of the victim's back.

Based on the quality grouping of gunshots, the high caliber of the involved revolver and the fact that Shellye Stark was a 46 year old woman who claimed never to have fired a handgun, investigators theorized that Shellye Stark had significant practice with the revolver prior to the shooting. (During her trial Shellye Stark showed the jury the stance she used while shooting Dale Stark. Your affiant recognized this stance as a "weaver stance" commonly used by police and shooting enthusiasts as a professional shooting position to maintain balance and accuracy.)

Information was developed that Shellye Stark left Washington State and moved to California to be with her new boyfriend, Brian Moore, in September 2007.

7

Shellye Stark signed a marriage dissolution agreement on 9/28/07, essentially waiving all assets with the exception of her personal vehicle and belongings and agreeing to pay $750 a month in child support for six months, thereafter the payment would be $500 a month until 3/22/10.

On 12/7/07 Shellye Stark obtained a Temporary Restraining Order (TRO). In this TRO, Shellye Stark claimed she was with Brian Moore on 12/5/07 when she received a telephonic death threat from Dale Stark. (It is known, based on her cellular records that she was actually in Spokane, WA from approximately 12/1/07 to 12/9/07. A search of her purse revealed receipts from Spokane area businesses dated 12/1/07 and 12/2/07. It is known based on Brian Moore's cell records that during the same time period he was in Los Angeles, CA area.)

On or about 12/7/07 Brian Moore filed a declaration in support of Shellye Stark's petition for request for a temporary order of protection. In this petition Moore described his intimate relationship with Shellye Stark. He described alleged extortion, threats and coercive behavior. He claimed on 12/4/07 during a telephone conversation, Dale Stark on speaker phone with Shellye Stark and Brian Moore, did threaten to kill Shellye Stark, Brian Moore and "our families." Brian Moore further wrote "given his state of mind, emphatic tone of voice and the preceding and following threats, I have every belief this man has the intention to cause great bodily harm to either petitioner, the party's minor child and/or me and my offspring."

Moore also referred to the e-mails in which he claimed Dale Stark was sending threats concerning blackmail. Attached to the petition were five e-mail messages, four of which were directed to Shellye Stark and one directed to Moore. It is your affiant's opinion that Moore and Shellye Stark greatly exaggerated Dale Stark's intent that Dale Stark was in fact frustrated over Shellye Stark taking money out of his accounts, failing to pay child support and failing to follow the arrangements which had been agreed upon in the marriage dissolution.

A review of the Stark's joint checking account at Spokane Teachers Credit Union revealed that between 9/25/07 and 12/10/07 Dale Stark controlled the checking account, using it for daily transactions. Shellye Stark did not appear to be involved in the day to day transactions. It is known that during this time period, Dale Stark was using two different series of check numbers, 3379-3383 and 1781-1785. Dale Stark's signature was unique, consistent and easily recognizable.

After his death, on 12/10/07, Shellye Stark immediately took over control of the account, which at the time had a balance of approximately $3,100. On 12/28/07 the records reveal a transfer of $9,500 from a JP Morgan/Chase Bank account into the STCU account.

A review of Dale Stark's account records from JP Morgan/Chase revealed that on or about 12/28/07 an unknown party made an electronic transfer in the amount of $9,500 from Dale Stark's home equity line of credit account into the STCU account. (It should

be noted that Shellye Stark at that time was still incarcerated at the SCSO Jail and was not released on bond until 1/2/08.)

On 1/3/08 Curtis Johnson, Shellye Stark's father, cashed two STCU checks, #3041 and 3042 in the amounts of $9,500 and $3,000 respectively. The checks appear to have been post dated on 11/26/07, prior to Dale Stark's death, were written out to Curtis Johnson and were signed with Dale Stark's name. The handwriting and signature on the two checks however, were clearly not written by Dale Stark.

Between 3/6/08 and 3/7/08 Shellye Stark issued three checks in the same series as the suspected forged checks, 3043, 3044 and 3045.

Copies of check numbers 3041 and 3042 were submitted to the WSP Crime Lab for handwriting analysis. The handwriting expert suggested that Curtis Johnson was the person who issued, signed Dale Stark's name and endorsed the checks. Further analysis is required.

Based on the marriage dissolution, it was also known that Dale Stark had a $400,000 life insurance policy through the National Guard. Shellye Stark was the lone beneficiary. Shellye Stark began making inquiries about the life insurance policy on or about 1/10/08. The money from this life insurance policy was eventually awarded to Christopher Stark later in 2008.

On 6/9/08 attorney Michael Kendall, Brian Moore's business partner, contacted your affiant and advised that Brian Moore admitted that he signed Michael Kendall's name to a life insurance policy affidavit which had been filed in order to claim Dale Stark's life insurance. Kendall said he gave Moore no authorization to sign his name to such a document. Your affiant discovered in the Spokane Superior Court Clerks Office a Declaration of California Attorney RE: Validity of Will which was filed with Spokane Superior Court on 5/5/08. It was signed in Orange County California on 4/23/08 with the assumed signature and printed name of Michael Kendall.

An insurance claim was filed by Shellye Stark on the Stark's former residence at 1620 S. Maple, claiming water damage. The water damage apparently occurred after Dale Stark's death. The house was later sold.

A review of Brian Moore's cellular records revealed repeated calls to Shellye Stark prior to the shooting on 12/09/08 at 0141 hours.

Dale Stark's Honda Accord was released to Shellye Stark's attorney, Russell Bradshaw.

On 3/2/09 at approximately 1200 hours during the trial of Shellye Stark, Deputy Pros. Mark Cipolla observed Shellye Stark and Brian Moore embracing and kissing in a yellow sports car parked in the west parking lot of the Spokane County Courthouse. Det. Hollenbeck and Det. Hill stopped that vehicle when it returned to the same parking lot at approximately 1315 hours.

Clerk Copy

9

The driver was identified as Brian Moore. Moore told Det. Hollenbeck that he was engaged to marry Shellye Stark and that they had recently purchased the vehicle together. He said he was currently living with Shellye Stark at ███████████████ in Spokane, WA. A review of the vehicle's registration revealed that it was a 2007 Pontiac Solstice convertible registered to Brian Moore at the ████████████ Insurance paperwork from the glove box showed that the car was insured to Brian Moore. Further investigation determined that the vehicle title had recently been pawned at Northwest Title Loans in Post Falls, ID.

On 3/2/09 Det. Hollenbeck and Det. Gilmore contacted Karen Jachetta, at Shellye Stark's residence, ████████████ This contact had been prearranged between Det. Hollenbeck and Brian Moore for service of a subpoena. Moore was not present. Jachetta said that Moore had gone to the store and had not returned. Jachetta told investigators that Christopher Stark purchased the Pontiac Solstice for his mother.

Over the course of this investigation, Moore has repeatedly avoided police contact in an apparent attempt to avoid subpoena service as a state's witness in Shellye Stark's trial.

W███ F██ will testify that she was employed as an office assistant at Brian Moore's law office between January 2006 and January 2008. She was aware that Brian Moore was married and had at least one child. She was also aware that Moore was engaged in multiple extramarital affairs, including one with Shellye Stark.

In late November 2007, Dale Stark left four messages on the office voice mail system. According to F██ Dale Stark sounded upset as he complained that Shellye Stark had been accessing his bank accounts and taking money without authorization; that Shellye Stark had not had much contact with their son Christopher Stark; that Shellye Stark had not been using her medication; that he was desperate for some kind of resolution and that he wanted no more contact with her. F██ said it was her impression that Dale Stark was angry over the fact that Brian Moore and Shellye Stark were interfering with his relationship with his new girlfriend. F██ said that Dale Stark did sound angry but made no threats toward Brian Moore or Shellye Stark.

On or about 12/7/07 F██ recalled Moore preparing an affidavit for a Washington State order of protection which Shellye Stark intended on filing against her husband. Moore claimed in the affidavit that Dale Stark had threatened Moore's life and the life of Moore's son.

In January 2008 Brian Moore approached F██ and told her that a private investigator would be interviewing her regarding the four voice mail messages left by Dale Stark. Moore encouraged F██ to "embellish and lie" about what had been said during the messages. Moore asked F██ to say that Dale Stark had in fact been making death threats.

F██ said that within a few weeks of Dale Stark's death, Moore asked F██ to come into his office. He was working on his computer and asked her to assist him in transferring

Clerk Copy

10

some money. She looked at the computer screen and realized he had accessed a bank account that belonged to Dale Stark. Moore commented that he was about to transfer "home equity" from Dale Stark's mortgage account. Fox immediately told Brian Moore that what he was doing was fraud. She continued to stand there and watched as Moore was about to complete the transfer. At this time he did not complete the transfer and commented that he would take care of it later. F███ was unsure of the financial institution but believed it may have been Citibank.

F███ was aware that Moore was actively raising money in order to bond Shellye Stark out of jail. On one occasion he came into the office with two credit cards that belonged to unknown persons. He asked F██ to run credit card charges of $3,500 on one card and $2,500 on the other. F██ did not recognize the names on the credit cards as clients.

On another occasion Moore came into the office with a large wad of money. She observed several $100's. He claimed there was $80,000 in the bundle and that he "didn't have to pay it back."

Shortly after Dale Stark's death, Moore discussed with F██ her knowledge of "erasing e-mail." He asked F██ if police could access e-mails that had been erased or deleted. She told him she didn't know. He asked her to contact Yahoo to find out if the erased e-mail could be permanently deleted. She called Yahoo and learned that deleted e-mails could not be retrieved. When F██ related this to Moore, he appeared to be relieved.

F██ was fired by Moore on 1/14/08. She believed she was fired because she refused to lie to the private investigator when questioned about the threatening phone calls from Dale Stark.

L███K███████ can testify she was employed as an office assistant in Brian Moore's law office. She was at the time of this interview, in April 2008, still currently employed by Moore.

K███████ did recall the messages left by Dale Stark at the office shortly before Dale Stark's death. She recalled only two messages left by a male who identified himself as Dale Stark. K████████ did not hear any threats directed at Brian Moore or Moore's son. She said Stark sounded as if he was frustrated over the fact he was paying all of Shellye Stark's bills. He made several references about being tired of paying for Shellye Stark's medication. It was K███████ impression that Dale Stark was frustrated over monetary issues.

K██████ said she saved the message for Brian Moore and believed Moore did listen to those messages.

K██████ admitted to having a sexual relationship with Brian Moore beginning after January 2007.

11

11

T████V███ will testify that she was involved in an extra martial affair with Brian Moore from July 2007 through January 2008. During this relationship V███ knew Moore was involved with other women. V███ also met Shellye Stark during this time period. Moore wanted V███ to leave her husband and volunteered to help with the divorce.

On 12/9/07 V███ met Moore at his business office. She said that Moore appeared to be excited and sexually aroused by the fact that Shellye killed her husband. V███ and Moore ended up having intercourse on a chair in his office.

On or about New Year weekend 2008 Moore approached V███ and asked for $12,000 for "his buddy", referring to Shellye Stark. Each time he contacted her, he asked for more money, eventually arriving at the sum of $50,000. He told V███ he was desperate and needed to bond Shellye Stark out of jail. He suggested that V███ take money out of her equity line of credit on her house. When V███ told him she would not do this, Moore became angry. He repeatedly asked for money and at one point told her to ask her mother, sister or anyone else who may be able to provide monetary assistance. He continued to pressure V███ to give him money on the pretense he was trying to bond Shellye Stark out of jail.

V███ continued to refuse his demands, at which time Moore threatened V███ saying he would make her life miserable. He said he would create a website in which he would "show the world" photographs of her in intimate poses. (Moore took photographs of V███ during their affair.) He also threatened to tell her husband and child of the affair and suggested that he would send the photos to her husband.

Moore apologized for his behavior and V███ continued to see him until approximately 1/21/08 when the relationship ended. Moore continued to pursue V███ and was repeatedly asked to stop his harassing behavior.

On or about 3/26/08 V███ reported that Brian Moore sent her husband the provocative photographs and a graphic letter describing his sexual relationship with V███

**Stephanie Moore can testify** that she is married to Brian Moore. She had been married to Moore for over 16 years and they have a 16 year old son in common. At the time Brian Moore still resided at the residence, however they led separate lives.

Stephanie did not become aware of the Dale Stark murder until June 2008.

Brian Moore approached Stephanie Moore in January 2008 and said that his best friend Rick had a girlfriend who was accused of murder. He told Stephanie that this girlfriend was innocent and that they were trying to raise money for her bond. He needed to come up with $25,000 to post a $250,000 bond. He told her that he would not fight a divorce if she agreed to co-sign a loan on their mortgage so he could post bond.

Since January 2008, Brian Moore has made repeated business trips and traveled to Spokane and the Priest River area. He spent Christmas in Spokane and claimed to be taking a deposition from a woman who had been involved in an accident with a moose.

Stephanie Moore was "physically scared" of Brian Moore and said whenever she threatened to leave the relationship, he threatened her with physical violence.

Brian Moore had multiple guns in the house and he considered himself an expert with pistols.

During this time period, Brian Moore had been attempting to borrow money from all of their friends. She knew that Brian Moore had been driving Shellye Stark's Volkswagen Bug since 2007.

In March 2009 Stephanie Moore told your affiant that Brian Moore was no longer living at her residence. While moving his belongings into boxes in the garage, she came across a box of .357 caliber ammunition and what appeared to be a homemade silencer. Stephanie Moore thought that it was unusual for him to have .357 caliber ammunition because to her knowledge he did not own any revolvers. Brian Moore later moved the boxes from the garage.

In November or December 2007 Stephanie Moore recalled hearing Brian Moore talking about a large sum of money that he anticipated acquiring in the near future. Brian kept saying he was coming into money, a big settlement out of Washington State. She recalled him saying something about "expecting a big payoff, an insurance thing." Stephanie's sister, Kris Clevenger, also heard this conversation.

**Kris Clevenger will testify** that with a week of Christmas 2007 she was in Stephanie Moore's kitchen discussing a Christmas bonus with Brian Moore. Brian commented that he was also coming into a large sum of money soon because his law firm had settled on a case. Clevenger said she was very excited about the couple thousand dollars she was going to receive. Brian Moore commented that he was expecting a lot more than that.

Clevenger was aware that Brian Moore had been flying back and forth between Washington State and California between September 2007 and New Years 2008.

A██ V███ will testify that she had a romantic sexual relationship with Brian Moore from November 2006 until November 2007 when she discovered Moore was also dating a woman named Shellye Stark.

Brian Moore told V███ that his wife had died in an accident. He claimed he was a retired lieutenant colonel from the Army and had previously worked for the CIA. He claimed to own two law firms.

09/15/2009 16:56 FAX 509 477 5836    BCB PROSECUTORS    ☑012

Clark Copy

13

On one occasion during their relationship she met Brian Moore at Turner's Outdoorsman, an indoor shooting range. Moore said he was involved in a shooting club and needed to purchase ammunition and a holster for a competition.

A██████ E█████ will testify that she was a friend of Brian Moore. She was a prostitute who had sexual relations with Brian Moore. Edwards met Shellye Stark on a "work" website called truthsayers.com. This website was used to communicate with potential clients in the escort business. Shellye Stark was also acting as an escort and needed a place to live. E█████ introduced Shellye Stark to Brian Moore. E█████ learned of the idea that Shellye Stark was going to travel to Spokane in order to serve a TRO on her ex-husband. E█████ believed something bad was going to happen if Shellye Stark traveled to Spokane to serve the order. Shellye Stark told E█████ that she was scared and E█████ told her not to go. E█████ repeatedly questioned Shellye Stark as to why Shellye had to go to Spokane. Shellye Stark would not give her an answer. When E█████ confronted Brian Moore about the necessity of Shellye Stark going to Spokane to serve the order on her ex-husband, Moore became angry with E██████' line of questioning and hung up on her.

E█████ frequently accompanied Brian Moore to local indoor gun ranges. Brian Moore recently called and asked if Shellye Stark had ever accompanied them to a shooting range. E█████ did not recall Shellye Stark doing so. E█████ believed Brian Moore was "trying to plant an idea" in her head that Shellye Stark did not go to a shooting range with him.

M█████ K█████ will testify that he was an attorney working with Brian Moore as partners in a law practice that specialized in divorce. Brian Moore was a paralegal that owned and operated the office. K█████ oversaw the legal transactions during the course of everyday business. On or about 6/9/08 K█████ and Moore had a conversation in which Moore admitted to K█████ that he forged K█████ name on a Spokane Superior Court document that dealt with Dale Stark's will and life insurance policy. K█████ did not give Moore permission to use his name and never signed any legal documents associated with Shellye or Dale Stark.

Moore told K█████ that he did not reveal all of the details of his knowledge of Dale Stark's murder because he didn't want "Shellye Stark to look bad."

Brian Moore approached K█████ in June 2008 and asked for a $30,000 loan. K█████ was aware that since Dale Stark's murder, Moore had borrowed money from several friends and he knew there was no way that Brian Moore would be paying this money back.

K█████ feared for his safety because Brian Moore bragged about being an assassin for the government. He knew that Brian Moore frequently carried a firearm.

On or about 6/11/08 M█████ K█████ received a telephone from Brian Moore. Moore was very angry and accused K█████ of cooperating with the police investigation.

14

Clerk Copy

14

Moore told K▓▓▓ he knew that K▓▓▓ had been speaking to your affiant and Moore threatened to sue K▓▓▓ and report him to the California Bar Association for abusing his attorney/client privilege. Moore accused K▓▓▓ of extorting money from him.

During a subsequent meeting in person, Moore accused K▓▓▓ of "wearing a wire."

**Brian Moore was interviewed** by your affiant on 1/30/08 and 1/4/08. Brian Moore admitted to your affiant the following:

- He was having an extramarital affair with Shellye Stark and several other women;

- That he encouraged Shellye Stark to "renegotiate" the marriage dissolution with Dale Stark;

- That the alleged death threats were made by Dale Stark during a telephone conversation on or about 12/5/07;

- That his employees Wendy Fox and Lucinda Knudson overheard these threats;

- That he later claimed this "conversation" was actually two or three messages left by Dale Stark on his business voice mail;

- That he encouraged Shellye Stark to serve a TRO on Dale Stark which would effectively remove Dale Stark from his residence and seize his car;

- That a "plan" was developed to serve the order on Dale Stark when he returned home from a business trip in the early morning hours of 1/9/07;

- That he told Shellye Stark to arm herself with a handgun for "protection";

- That he was aware Shellye Stark did in fact arm herself with a .357 caliber revolver obtained from a relative;

- That Shellye Stark purchased ammunition at a store;

- That he was communicating with Shellye Stark on a continual basis before and after the shooting;

- That he traveled to and from Spokane on multiple occasions before and after the shooting;

- That Dale Johnson and Christopher Stark called him immediately after the shooting and prior to calling 9-1-1;

- That he "just wanted to know" about the events that transpired after the shooting;

Clerk Copy

15

- That after Shellye Stark's arrest he hired a "defense team" and bonded Shellye Stark out of jail;

- That he communicated with Shellye Stark's family, including Christopher Stark, Dale Johnson, Dennise Johnson and Curtis Johnson, and encouraged them not to cooperate with the investigation;

- That he researched whether or not law enforcement could retrieve e-mail from his e-mail server after the murder;

- That he denied knowledge of Dale Stark's life insurance policy after having admitted that he reviewed the marriage dissolution paperwork;

- That he admitted sending T█████ V███ husband a graphic letter describing his sexual affair with V███ and photographs of their sexual encounters;

- That when Moore was asked if he had sex with T███ V██ on the day Dale Stark was murdered, he said, "No, I just wanted to talk. You don't just talk when you're with T█████ she likes sex."

- That in February 2009 Brian Moore said he and Shellye Stark had recently purchased a 2007 Pontiac Solstice together; they were engaged to be married and were living together at ███████████ in Spokane, WA.

**Ted Pulver will testify** that he was the private investigator contracted by Shellye Stark to investigate the allegation of murder filed against her. During this investigation, Pulver developed information that Brian Moore was extorting a prosecution witness and that he had additional information that would implicate Moore in the murder of Dale Stark.

On 3/26/09, a subpoena was served on Pulver in order to obtain the following information. Pulver will confirm the listed information when ordered to do so by a judge.

- That the murder of Dale Stark was preplanned in order to acquire Dale Stark's assets. Brian Moore anticipated and planned to avoid being implicated.

- Brian Moore expected monetary gain for his "service" in assisting Shellye Stark with the financial gains after Dale Stark's murder.

- Brian Moore directed the recovery of Dale Stark's assets including life insurance, insurance/sale of Dale Stark's home; bank accounts and other assets.

- Brian Moore and Shellye Stark discussed the specific date and time for this plan to be carried out.

16

- Prior to the murder Brian Moore and Shellye Stark were using "throw away" cell phones anticipating the eventual police investigation.

- Brian Moore anticipated that Dale Stark would become angry when served with a protection order and that Shellye Stark would be justified in shooting him. He insisted that she arm herself with a handgun. He told her that if she did not fire accurately the victim would get her.

- Prior to the murder Brian Moore and Shellye Stark were aware that Dale Stark kept a personal handgun hidden in his kitchen (this is not the handgun used in the murder). At Brian Moore's direction, Shellye Stark removed Dale Stark's handgun, a 9 mm. pistol, while he was gone on the business trip prior to 12/09/07. She then provided the handgun to Brian Moore for disposal. Brian Moore further instructed Shellye Stark to move any other firearms in the house so that Dale Stark could not immediately use one of those guns in self-defense.

- Brian Moore advised Shellye Stark to purchase hollow point ammunition.

- After the murder, Brian Moore manipulated Dale Stark's will and placed this manipulated will in Dale Stark's safe at his residence. He then instructed Pulver to obtain this manipulated will and provide it to the civil attorney handling Shellye's Stark's financial affairs. When Pulver refused to do this, Brian Moore instructed Shellye Stark to provide the manipulated will to the civil attorney.

- Brian Moore believed that the National Guard would have a copy of Dale Stark's authentic will. He instructed Shellye Stark to inquire with the National Guard as to whether or not they had an authentic will.

- Shellye Stark's civil attorney needed to authenticate the manipulated will provided by Brian Moore. Brian Moore "doctored" a court document to authenticate this manipulated will. He asked attorney M███ K███ to sign the court document of which K███ refused. Brian Moore admitted to Pulver that he forged the attorney's signature on this court document. K███ found out about the forged document and was going to cooperate with the police investigation. Brian Moore boasted that he "extorted" K███ with a manipulated conversation to make it appear that K███ was involved in the use of drugs. K███ feared for his reputation and stopped cooperating with the investigation. Brian Moore provided Pulver with an audio copy of this manipulated conversation. Pulver has retained the thumb drive that contains this information. Brian Moore made it very clear to K███ that he should not cooperate with the police investigation.

- That as Pulver continued to investigate this case; he continued to discover more information that implicated Brian Moore.

On 3/18/09 Shellye Stark was convicted of First Degree Murder and Conspiracy to Commit First Degree Murder.

17

Your affiant believes probable cause exists to charge Brian Moore with one count of First Degree Murder and one count of First Degree Conspiracy to Commit Murder.

I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.  (9A.72.085)

DATE___4/24/09___PLACE_Spokane, WA__SIGNATURE_____

18

1  Christina L. Hunt
   FEDERAL DEFENDERS OF EASTERN WASHINGTON AND IDAHO
2  10 North Post, Suite 700
   Spokane, Washington 99201
3  (509) 624-7606

4  Attorneys for Defendant
   BRIAN LEIGH MOORE

5
                    UNITED STATES DISTRICT COURT
6                   EASTERN DISTRICT OF WASHINGTON
                    (HONORABLE CYNTHIA IMBROGNO)
7
   UNITED STATES OF AMERICA,      )
8                                 )
                    Plaintiff,    )    MJ-09-0272-CI
9                                 )
        vs.                       )    NOTICE OF APPEARANCE
10                                )
   BRIAN LEIGH MOORE,             )
11                                )
                    Defendant.    )
12 _____)

13 TO:  JAMES A. McDEVITT, UNITED STATES ATTORNEY
        K. JILL BOLTON, ASSISTANT UNITED STATES ATTORNEY
14
       Please be advised the attorney with Federal Defenders of
15
   Eastern Washington and Idaho assigned to the above-referenced
16
   case is Christina L. Hunt. Please forward all future
17
   correspondence and pleadings to the name and address above.
18
   Dated:    September 16, 2009
19
                            Respectfully Submitted,
20
21                              s/ Christina L. Hunt
                                Christina L. Hunt, GA 378501
22                              Attorneys for Defendant
                                Federal Defenders of
23                              Eastern Washington and Idaho
                                10 North Post, Suite 700
24                              Spokane, Washington 99201
                                Telephone: (509) 624-7606
25                              Fax: (509) 747-3539
                                Email: Tina_Hunt@fd.org
26

27 NOTICE OF APPEARANCE
                                    1

1 **CERTIFICATE OF SERVICE**

2     I hereby certify that on September 16, 2009, I

3 electronically filed the foregoing with the Clerk of the Court

4 using the CM/ECF System which will send notification of such

5 filing to the following: K. JILL BOLTON, Assistant United States

6 Attorney.

7
                                    s/ Christina L. Hunt
8                                   Christina L. Hunt, GA 378501
                                    Attorneys for Defendant
9                                   Federal Defenders of
                                    Eastern Washington and Idaho
10                                  10 North Post, Suite 700
                                    Spokane, Washington 99201
11                                  Telephone: (509) 624-7606
                                    Fax: (509) 747-3539
12                                  Email: Tina_Hunt@fd.org

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 NOTICE OF APPEARANCE

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## MAGISTRATE JUDGE IMBROGNO

### MJ-09-272
### USA v BRIAN LEIGH MOORE

### RULE 5 BAIL HEARING: 9/17/09

[ X ]   Honorable Cynthia Imbrogno          [ X ]   Jill Bolton, USAtty

[ X ]   L. Stejskal, Courtroom Deputy       [ X ]   Christina Hunt, Defense Counsel

[ X ]   Shawn Kennicutt, Pretrial / Probation

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# Remarks

(Continued from 9/15/09):   The Government proffered the Supplemental Pretrial Services report and moved for the continued detention of defendant. Defense counsel raised objections and orally moved for a continuance of this matter. The Court will review the recording of the prior hearing. Defendant will remain in the custody of the U.S. Marshal pending further Order of the Court.

*RULE 5 BAIL HEARING [S/CI]: 9/18/09 @ 1:30 pm*

FTR-S * 1:44 - 1:52 pm

RULE 5 BAIL HEARING: 9/17/09

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## MAGISTRATE JUDGE IMBROGNO

### MJ-09-272
### USA v BRIAN LEIGH MOORE

### RULE 5 BAIL HEARING: 9/18/09

[ X ]    Honorable Cynthia Imbrogno          [ X ]    Jill Bolton, USAtty

[ X ]    L. Stejskal, Courtroom Deputy        [ X ]    Christina Hunt, Defense Counsel

[ X ]    Brenda Kuest, Pretrial / Probation

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# Remarks

(Continued from 9/17/09):  The Court advised the parties that the recording and Supplement to the Motion for Detention have been reviewed.  The Court will permit both parties to present proffers and argument.

Government witness, Detective Kip Hollenbeck, Spokane Police Department, sworn and testified; cross-examination.  Ms. Hunt moved for production of search warrant and reports; argument.  The Court granted the motion for production and granted a continuance.

*BAIL HEARING [S/CI]: 9/22/09 @ 1:30 pm*

FTR-S * 1:34 - 1:55 pm
RULE 5 BAIL  HEARING: 9/18/09

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## MAGISTRATE JUDGE IMBROGNO

### MJ-09-272
### USA v BRIAN LEIGH MOORE

### RULE 5 BAIL HEARING:   9/22/09

[ X ]    Honorable Cynthia Imbrogno        [ X ]    Matt Duggan, USAtty

[ X ]    L. Stejskal, Courtroom Deputy        [ X ]    Christina Hunt, Defense Counsel

[ X ]    Shawn Kennicutt, Pretrial / Probation

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# Remarks

(Continued from 9/18/09)  Government witness, Detective Kip Hollenbeck, Spokane Police Department, took the stand under his original oath and was cross-examined by Ms. Hunt (Recess: 2:10 - 2:25 pm).  Ms. Hunt continued cross-examination; re-direct.  Argument.

The Court ruled that there are no combination of conditions to ensure that defendant is not a risk of flight and does not pose a risk to the community. Defendant detained by the U.S. Marshal pending further Order of the Court.

FTR-S * 1:45 - 2:45 (recess 2:10 - 2:25) pm
BAIL HEARING: 9/22/09

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. MJ-09-272 |
| Plaintiff, | **FED. R. CRIM. P. 5** |
| v. | ORDER OF REMOVAL |
| BRIAN LEIGH MOORE, | ☑  MOTION GRANTED (Ct. Rec. 3) |
| Defendant. | ---- **ACTION REQUIRED** ---- |

Date of hearing: September 17, 2009.

☑  Defendant, individually and through counsel, previously waived the right to an identity hearing, pursuant to Rule 5. Defendant's waiver is accepted as knowing and voluntary.

☐  Defendant, personally and through counsel, waived the right to a bail hearing.

☑  The court has conducted a bail hearing pursuant to 18 U.S.C. § 3142(f), and has considered the Pretrial Services Report and proffers of the parties. The court, based upon the factual findings and statement of reasons for detention hereafter set forth, and as stated in court, finds the following:

**FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION**

☐  Pursuant to 18 U.S.C. § 3142(e), there is a rebuttable presumption that Defendant is a flight risk and a danger to the community based on the nature of the pending charge. Application of the presumption is appropriate in this case.

☐  Defendant has a history of:    ☐  Failures to appear
☐  Failures to comply

☐  Defendant has few or no ties to the community.

☐  Defendant has a ☐ significant  criminal history.

☐  Defendant has an outstanding warrant(s).

☐  Defendant does not have a suitable residence.

ORDER OF REMOVAL - 1

1 ☐  Defendant appears to suffer from chemical dependency.

2 ☑  Other: _Allegations that several potential_

3 _witnesses fear are in fear of defendant_

4 _Considerable testimony by the_

5 _investigative detective as to these allegations_

6 _____

7 _____

8 ☐  The court finds the Defendant is not supervisable.

9 ☑  By a preponderance of the evidence there are no conditions or
combination of conditions other than detention that will
10   reasonably assure the appearance of Defendant as required.

11 ☑  By clear and convincing evidence there are no conditions or
combination of conditions other than detention that will ensure
12   the safety of the community.

13 ☐  Defendant is currently on probation/supervision resulting from
a prior offense.

14

15 ☐  Bureau of Immigration and Customs Enforcement Detainer.

16   **IT IS ORDERED:**

17   1.   Defendant is committed to the custody of the United States
Marshal for detention until further order of the court, and for
18   removal as soon as reasonably possible to the Central District of
19   California.

20   2.   Defendant shall be made reasonably available for
21   communication with court-appointed counsel.

22   3.   Until appointment of counsel in the charging district, all
23   notices shall be sent to the Federal Defenders of Eastern
24   Washington, N. 10 Post Street, Suite 700, Spokane, WA 99201.

25   DATED September 17, 2009.

26

27                    CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE
28

ORDER OF REMOVAL - 2